## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| K.P., *a minor, by and through his next friend*, KIA POLLARD, | |
| *Plaintiff*, | Case No. 24-cv-1325 (ABJ) |
| v. | |
| DISTRICT OF COLUMBIA, *et al.*, | |
| *Defendants*. | |

## DEFENDANT ERIC MOORE'S SUPPLEMENTAL
## MOTION TO PARTIALLY DISMISS THE COMPLAINT

Defendant Eric Moore respectfully moves the Court under Fed. R. Civ. P. 12(b)(6) to

dismiss Counts 1, 2, 4, 6, 7, 9, 11, 13, and 16 of the Complaint as against him.  A memorandum

of points and authorities in support of this motion and a proposed order are attached.

Date:  October 3, 2024

Respectfully submitted,

SETH ROSENTHAL
Chief Deputy Attorney General
for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Steven N. Rubenstein*
STEVEN N. RUBENSTEIN [1013094]
Chief, Civil Litigation Division Section V

*/s/ David B. Jastrab*
DAVID B. JASTRAB [1048299]
Assistant Attorney General
400 6th Street NW
Washington, D.C. 20001
(202) 309-8882
david.jastrab@dc.gov

*Counsel for Defendant Eric Moore*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| K.P., *a minor, by and through his next friend*, KIA POLLARD,<br><br>    *Plaintiff*,<br><br>    v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>    *Defendants*. | Case No. 24-cv-1325 (ABJ) |

**MEMORANDUM OF POINTS AND**
**AUTHORITIES IN SUPPORT OF DEFENDANT ERIC MOORE'S**
**SUPPLEMENTAL MOTION TO PARTIALLY DISMISS THE COMPLAINT**

**INTRODUCTION**

Plaintiff K.P. asserts constitutional, common law, and statutory claims against Defendant Eric Moore, the District of Columbia (the District), and eight other District employees.  As stated in Moore's Notice of Joinder [31], Moore adopts certain arguments in Defendants' District, Archie Brawner, Alison Bull, Johnette Gholston, Sam Mays, Gabrielle Rice, Dominic White, Christopher Williams, and Jai Wilson's Motion to Partially Dismiss Plaintiff's Complaint, and its accompanying memorandum (the Lead Motion to Dismiss) [28-1].  That motion addresses allegations that the Defendants unlawfully used force that restricted Plaintiff's breathing, failed to intervene in other Defendants' use of such force, and failed to provide timely medical care. That brief's arguments concerning such alleged conduct apply equally to the claims against Moore; accordingly, while Moore's motions seek relief as to all claims against him, this memorandum addresses only those allegations concerning Moore alone.

Plaintiff's constitutional claims fail because the Complaint's factual allegations do not describe First, Fifth or Eighth Amendment violations and Moore is entitled to qualified immunity; Plaintiff's intentional tort claims fail because the Complaint does not sufficiently allege assault, battery, or intentional infliction of emotional distress (IIED) and because Moore is protected by a qualified privilege, and Plaintiff's negligence claim fails because it is based on allegations of intentional conduct and preempted by the intentional tort claims.

## FACTS

The Complaint describes three incidents, two of which concern Moore.  The first is the May 7, 2023 incident in which Plaintiff defied instructions to return to his bedroom at New Beginnings Youth Development Center (New Beginnings), a secure residential facility for Department of Youth Rehabilitation Services (DYRS)-committed youth, which led to a physical struggle between Plaintiff and DYRS staff that tried to restrain him and place him in his room. Compl. ¶¶ 28–58 [1].  In addition to the allegations addressed in the Lead Motion to Dismiss, Plaintiff alleges that, after he bit Moore twice, Moore "dared K.P. to 'bite me again,' threatened to kill K.P., and ultimately bit K.P.'s arm." *Id.* ¶ 47.  He also alleges that, after another staff member pulled Moore up from the tangle of people on the floor, Moore kicked Plaintiff. *Id.* ¶ 51.

In the second incident involving Moore, Plaintiff alleges that, on May 22, 2023, he crossed paths with Moore in the New Beginnings outdoor compound, Moore called Plaintiff "hot," which Plaintiff "understood . . . to be an insinuation that [Plaintiff] 'snitched,' or told on, Defendant Moore by reporting Defendant Moore's behavior to the appropriate authorities." *Id.* ¶ 64.  Plaintiff then claims that "Moore squared his shoulders to K.P. and held up his fists, indicating an intent to physically fight K.P.," before other staff members intervened. *Id.* ¶ 65.

## STANDARD OF REVIEW

"In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must 'tak[e] note of the elements a plaintiff must plead to state a claim,'" and "determine[] whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Sanchez v. Off. of State Superintendent of Educ.*, 45 F.4th 388, 395 (D.C. Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Courts "construe the facts, and reasonable inferences drawn from them, in the light most favorable to [the plaintiff]," *Singletary v. Howard Univ.*, 939 F.3d 287, 293 n.1 (D.C. Cir. 2019); however, "[t]he Court need not accept as true any legal conclusions disguised as factual allegations, any 'naked assertion[s] devoid of further factual enhancement,' or any 'formulaic recitation[s] of the elements of a cause of action,'" *Islar v. Whole Foods Mkt. Grp., Inc.*, 217 F. Supp. 3d 261, 265 (D.D.C. 2016) (quoting *Iqbal*, 556 U.S. at 678). "Factual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and "where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## ARGUMENT

I.      **Plaintiff's Claims Relating to the May 7th Incident Fail.**

Plaintiff presses claims under the Constitution, District common law, and a District statute based on the May 7th incident.  None pass muster.[1]

Plaintiff concedes that he actively resisted staff members who directed him into his room. Compl. ¶¶ 32, 34.  As more attempted to assist, he continued to resist.  As Moore and others attempted to subdue him, he concedes that he bit Moore twice and that his second bite preceded Moore allegedly biting him.  *Id.* ¶¶ 40, 46–47.  Finally, Plaintiff alleges that Moore kicked him once while he was restrained by other officers.  *Id.* ¶ 51.  Even if true, Plaintiff fails to state a plausible claim for relief based on this alleged conduct.

### a.   Eighth and Fifth Amendments

A plaintiff asserting an Eighth Amendment[2] excessive force claim "must prove that a government official acted 'maliciously and sadistically for the very purpose of causing harm,' and that the consequent injury was more than *de minimis*."  *Chandler v. D.C. Dep't of Corr.*, 145 F.3d 1355, 1360 (D.C. Cir. 1998) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).  This is a context-dependent inquiry, *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)), and the facts as alleged fall short of this standard.  When Moore arrived to assist his colleagues, Plaintiff was already actively resisting their attempts to get him into his bedroom, and when Moore left the

---

[1]     The Lead Motion to Dismiss explains that there is no private right of action under D.C. Code § 5-125, the statutory basis for Count 16.  Lead Mot. to Dismiss at 30–34.  Because Moore adopts the Lead Motion's argument and that argument applies with equal force to the claim brought against Moore, this brief does not provide further argument on Plaintiff's statutory claim.

[2]     As noted in the Lead Motion to Dismiss, neither the Supreme Court nor the D.C. Circuit has addressed the question of whether an adjudicated juvenile offender in a detention facility must bring an excessive force claim under the due process clause of the Fifth (or Fourteenth) Amendment or under the Eighth Amendment.  Lead Mot. to Dismiss at 25 n.5.  And, just as Plaintiff fails under either standard for the conduct at issue in the Lead Motion to Dismiss, so too for the additional alleged conduct by Moore discussed in this motion.  Thus, the Court need not resolve this question.

scene, staff still had not succeeded in achieving his compliance.  *See* Compl. ¶¶ 34, 53.  Every action attributed to Moore thus occurred in the context of Plaintiff's ongoing resistance, which escalated to him biting Moore at least twice.  Unable to achieve compliance through several officers' physical restraint of Plaintiff, Moore's alleged use of alternative forms of force were not malicious or sadistic.  *See Harris v. Allison*, No. 14-cv-1104 (RBW), 2016 WL 3166296, at *3 (D.D.C. June 6, 2016) (no excessive force where plaintiff "resist[ed] efforts to restrain him," "he could not be subdued without physical force," and "[t]he need for force resulted from the plaintiff's refusal to remain inside his cell . . . coupled with his unwillingness to be restrained by the defendant officers"); *see also, e.g.*, *Johnson v. Sootsman*, 79 F.4th 608, 612 (6th Cir. 2023) (no Eighth Amendment violation where deputy "grabbed [plaintiff's] neck, pushed him against the wall, and took him to the ground to be handcuffed" in violation of jail regulations); *Shumpert v. City of Tupelo*, 905 F.3d 310, 323 (5th Cir. 2018) (stating that "the 'measured and ascending' use of force is not excessive when a suspect is resisting arrest—provided the officer ceases the use of force once the suspect is subdued," and finding no excessive force where police dog bit resistant suspect); *Cf. Johnson v. District of Columbia*, 528 F.3d 969, 975 (D.C. Cir. 2008) (finding that "repeated" kicks to plaintiff's groin while plaintiff was prone on the floor with his arms and legs spread and had surrendered was excessive under the Fourth Amendment).  And the limited physical injuries alleged underscore the Complaint's failure to show that any force had "the very purpose of causing harm."  *Chandler*, 145 F.3d at 1360 (quoting *Whitley*, 475 U.S. at 321).  Indeed, regarding the allegations specific to Moore, Plaintiff only alleges "visible bite marks on his arm," and no injuries associated with the kick.  Compl. ¶ 56.

Plaintiff's Fifth Amendment claim fares no better.  "To violate the dictates of due process, the alleged conduct must be 'so egregious, so outrageous, that it may fairly be said to

shock the contemporary conscience.'" *Black Lives Matter D.C. v. Trump*, 544 F. Supp. 3d 15, 49–50 (D.D.C. 2021) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). "[T]o evaluate whether government action shocks the conscience," *id.*, relevant factors include "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm," *Norris v. District of Columbia*, 737 F.2d 1148, 1150 (D.C. Cir. 1984).  "[T]he appropriate standard" in this context "is solely an objective one." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

Plaintiff does not meet this standard.  His own admitted conduct of active resistance, including prolonged refusal to return to his room and biting Moore twice, underscore the reasonableness of escalating force to subdue him.  Under these circumstances, where other methods had not worked and Plaintiff's non-cooperation was drawing resources needed to ensure the security of the rest of the facility, a contemporaneous decision to escalate force—to an extent that ultimately still did not deter Plaintiff's resistance and that caused, at most, minor injuries— would not have been unreasonable.  *See Hudson*, 503 U.S. at 6 (acknowledging that "corrections officials must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance'" (quoting *Whitley*, 475 U.S. at 320)).

Even if Plaintiff's constitutional claims might otherwise have merit, they nonetheless fail because Moore is entitled to qualified immunity.  As the Lead Motion to Dismiss explains, "[a] government official is 'entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'"  Lead Mot. to Dismiss at 26 (internal quotation marks omitted) (quoting

*District of Columbia v. Wesby*, 583 U.S. 48, 62 (2018)).  "Clearly established" means that, at the time of the employee's conduct, the law was "sufficiently clear that every reasonable official would understand that what he is doing is unlawful."  *Wesby*, 583 U.S. at 63 (citations and quotation marks omitted).  This "demanding standard" contemplates that "existing law must have placed the constitutionality of the officer's conduct beyond debate" and protects "all but the plainly incompetent or those who knowingly violate the law."  *Id.* (citations and quotations omitted).  To be clearly established, "a legal principle must have a sufficiently clear foundation in then existing precedent," and must be "settled law." *Id.*  The rule must be "dictated," and not just suggested, by "'controlling authority' or a robust 'consensus of cases of persuasive authority.'"  *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011)).  "It is [the plaintiff's] burden to show that the particular right in question—narrowly described to fit the factual pattern confronting the officers—was clearly established," and "not the [government actor's] burden to show that the right had been called into question." *Dukore v. District of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015) (internal citation omitted).

Plaintiff does not allege that Moore violated a clearly established Eighth or Fifth Amendment right.  He "cannot demonstrate that he had any constitutional right to ignore orders from DYRS staff or that DYRS officials could not use good faith efforts to use force to restore order in the face of his ongoing resistance," Lead Mot. to Dismiss at 27, and the conduct at issue, particularly in the context of continued physical resistance to multiple staff members—is not proscribed by settled law.  *See Bailey v. Preston*, 702 F. App'x 210, 211 (5th Cir. 2017) (no clearly established right violated where resistant arrestee "was tased at least five times, struck with 'asp' batons four times, punched, kicked, and bitten by a K9 dog"); *Johnson v. Rogers*, 944 F.3d 966, 970 (7th Cir. 2019) (no clearly established right violated where officer may have

kicked suspect, even if done with partly retaliatory motive, because suspect was not yet under control and kick "must *also* be understood as an attempt to regain control"); *Dawson v. Anderson Cnty.*, 556 F. App'x 369, 370 (5th Cir. 2014) (no clearly established right violated where officer used pepper balls after initially cooperative pretrial detainee "did not comply with successive search commands given at her arrestee intake encounter"); *Lombardo v. City of St. Louis*, 38 F.4th 684, 689–92 (8th Cir. 2022), *cert. denied*, 143 S. Ct. 2419 (Mem.) (2023) (no clearly established right violated where resistant pretrial detainee died after struggle with several officers who placed him in prone restraint for fifteen minutes and applied pressure to his back).  Thus, even if Plaintiff has stated plausible Eighth or Fifth Amendment claims based on Moore's conduct, Moore is still entitled to qualified immunity.[3]

     **b.**    <u>**Torts**</u>

If the Court dismisses the constitutional claims, it should decline to exercise supplemental jurisdiction over any remaining District-law claims.  Lead Mot. to Dismiss at 30 (citing 28 U.S.C. § 1367(c)(3)).  But if the Court retains jurisdiction, it should dismiss the intentional tort claims against Moore.

Under District law, "[j]ust as qualified immunity is a shield against liability in Section 1983 excessive force claims, qualified privilege protects officers in common law claims of assault and battery."  *Williams v. District of Columbia*, 268 F. Supp. 3d 178, 194 (D.D.C. 2017) (citing *District of Columbia v. Chinn*, 839 A.2d 701, 705–06 (D.C. 2003)).  A District employee "has a qualified privilege to use reasonable force . . . , provided that the means employed are not in excess of those which the actor reasonably believes to be necessary."  *Kelly*

---

[3]     Relatedly, for the reasons provided in the Lead Motion to Dismiss, Plaintiff's bystander liability claim fails and Count 2 of the Complaint should be dismissed as to Moore.  *See* Lead Mot. to Dismiss at 23–24.

*v. Gaton*, No. 19-cv-23 (CKK), 2021 WL 5310566, at *8 (D.D.C. Nov. 15, 2021) (quoting *Scales v. District of Columbia*, 973 A.2d 722, 730 (D.C. 2009)).  "[T]he test for qualified privilege in an assault and battery suit is both subjective and objective: the officer must subjectively believe that he or she used no more force than necessary, but the officer's judgment is compared to that of a hypothetical reasonable . . . officer placed in the same situation."  *Scales v. District of Columbia*, 973 A.2d 722, 730 (D.C. 2009).  "The objective piece of the qualified privilege analysis is similar to the excessive force standard applied in the Section 1983 context." *Kelly*, 2021 WL 5310566, at *8 (quoting *Williams v. District of Columbia*, 268 F. Supp. 3d 178, 194 (D.D.C. 2017)).  Here, Moore's alleged use of force furthered the legitimate objective of achieving compliance with staff directives as lesser uses of force had failed.  *Cf. Thurman v. District of Columbia*, 282 A.3d 564, 576–77 (D.C. 2022) (qualified immunity where juvenile was bitten by police dog without prior warning while hiding from police because "[t]he lack of consensus throughout the circuits and lack of precedent in our jurisdiction supports the conclusion that [the plaintiff's] right was not clearly established").  Moreover, a natural reading of the alleged statement supporting Plaintiff's assault claim, that "Moore dared [Plaintiff] to 'bite me again,' [and] threatened to kill [Plaintiff]," Compl. ¶ 47, is conditional, *cf. High v. United States*, 128 A.3d 1017, 1019 (D.C. 2015) (reversing assault conviction where appellant told officer, "take that gun and badge off and I'll fuck you up"), and in any event, the bare assertion that Moore "threatened to kill [Plaintiff]" is simply too vague and thin to satisfy basic pleading requirements.  *Iqbal*, 556 U.S. at 678.

The May 7th allegations against Moore likewise fail to state a plausible claim for IIED. "To succeed on a claim of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly

(3) causes the plaintiff severe emotional distress." *Armstrong v. Thompson*, 80 A.3d 177, 189 (D.C. 2013) (quoting *District of Columbia v. Tulin*, 994 A.2d 788, 800 (D.C. 2010)).  Moore's alleged conduct in response to Plaintiff's continual physical resistance, including biting Moore at least two times, does not meet this standard.  "The conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Id.* (quoting *Drejza v. Vaccaro*, 650 A.2d 1308, 1312 n. 10 (D.C.1994)).  Moore's verbal "assault" falls far short of the mark, and his alleged uses of force were not so beyond the pale as to exceed the bounds of decency.  Even taking all inferences in Plaintiff's favor, he fails to plead a viable IIED claim.[4]

## II.  Plaintiff's Claims Related to the May 22 Incident Fail.

Plaintiff claims that he crossed paths with Moore on May 22, 2023 and that Moore called him "hot" and raised his fists in a fighting stance.  Compl. ¶¶ 63–65.  From this sparse description of this interaction, Plaintiff attempts to extract two constitutional claims and three tort claims.  All lack merit and should be dismissed.

### a.  First and Fifth Amendments

Plaintiff claims that Moore violated the First Amendment by acting in retaliation for Plaintiff's reporting the May 7th incident to authorities.  But his factual allegations do not support his claim.  "To state a claim for First Amendment retaliation, [Plaintiff] must allege that [he] engaged in protected conduct, that the government took retaliatory action capable of deterring another from the same protected activity, and that there is a causal link between the

---

[4]    As explained in Moore's Notice of Joinder, Moore adopts the Lead Motion to Dismiss's arguments supporting dismissal of Plaintiff's negligence claims.  *See* Lead Mot. to Dismiss at 37–38.  These arguments apply with even more force to Moore, who, according to the Complaint, left the scene of the May 7th disturbance before it had resolved and was not present to ensure or fail to ensure provision of medical care to Plaintiff.  *See* Compl. ¶¶ 51–52.

two." *Comm. on Ways and Means, U.S. House of Reps. v. Dep't of Treasury*, 45 F.4th 324, 340 (D.C. Cir. 2022) (citing *Scahill v. District of Columbia*, 909 F.3d 1177, 1185 (D.C. Cir. 2018)). This "improper motive must be a but-for cause of the government action, 'meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.'" *Id.* (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019)).

Plaintiff's claim falters at the second and third elements.  Even affording Plaintiff every reasonable inference, calling someone "hot" and "squaring up" to someone would not "deter a person of ordinary firmness in plaintiff's position from speaking again." *Scahill*, 909 F.3d at 1185 (quoting *Doe v. District of Columbia*, 796 F.3d 96, 106 (D.C. Cir. 2015)); *see also Zielinski v. Annucci*, 547 F. Supp. 3d 227, 233 (N.D.N.Y. 2021) (finding no viable First Amendment retaliation claim where correctional officer made verbal threats of future physical harm and called plaintiff a "rat" in front of other inmates).  Moreover, the conclusion that Moore was motivated by Plaintiff's "talking with Disability Rights about the assault he endured," Compl. ¶ 63, is entirely speculative and not reasonably inferred from any other factual allegation. Without the benefit of this unfounded inference, Plaintiff cannot establish the "improper motive" that must be a "but-for cause" of the government conduct for his claim to survive. *See Jolley v. Unknown Named BOP Directors*, No. 22-cv-2580 (CKK), 2024 WL 1240091, at *13 (D.D.C. Mar. 22, 2024) (holding that plaintiff's personal belief alone is not enough to state a First Amendment retaliation claim (citing *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999))); *see also Zielinski*, 547 F. Supp. 3d at 234 (noting that a "too-lax application" of the causation standard for First Amendment retaliation claims "risk[s] transforming a whole range of day-to-day inmate/officer interactions into First Amendment retaliation claims").  The alleged facts do not support a First Amendment claim, and the Court should dismiss Plaintiff's Count 6.

Plaintiff's Fifth Amendment claim based on the same alleged incident also fails.  He claims that Moore "dangerously threaten[ed]" him, violating an "affirmative duty to protect K.P. from harm."  Compl. ¶ 135.  But calling someone "hot" and "squar[ing] up" with them as though spoiling for a fight are not "so egregious, so outrageous, that [they] may fairly be said to shock the contemporary conscience."  *Black Lives Matter D.C.*, 544 F. Supp. 3d at 49–50; *see also Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992) (only most egregious official conduct can be "arbitrary in a constitutional sense"); *Butera v. District of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001) (requirement that state action be sufficiently egregious to shock conscience "exists to differentiate substantive due process, which is intended only to protect against arbitrary government action, from local tort law").  Plaintiff's allegations are inadequate to support his Fifth Amendment claim.

And, again, Moore is entitled to qualified immunity.  While the alleged conduct may have been unprofessional, the unlawfulness of that alleged conduct under the First Amendment was not sufficiently clear at the time.  *See, e.g.*, *Hayes v. Dahlke*, 976 F.3d 259, 274 (2d Cir. 2020) ("It is well-settled that [i]nsulting or disrespectful comments directed at an inmate generally do not rise to the level of a constitutional violation, and that prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse." (internal quotation marks and citation omitted)); *Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (correctional officers' verbal threats not sufficiently adverse to support a First Amendment Retaliation claim based on prisoner's allegation that he was harassed in retaliation for corresponding with civil rights organizations); *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996) ("Allegations of threats or verbal harassment, without any injury or damage, do not state a claim under 42 U.S.C. § 1983.").  So too with respect to Plaintiff's Fifth

Amendment claim.  Indeed, there is no Supreme Court or D.C. Circuit decision finding comparable conduct to violate the Fifth Amendment, nor any robust consensus of cases from other Circuits finding comparable conduct to violate the Fourteenth Amendment.

    **b.**   **<u>Torts</u>**

Plaintiff also brings three tort claims based on the May 22 incident: assault, IIED, and negligence.  As with the May 7th incident, the Court should decline jurisdiction over the District law claims if the constitutional claims are dismissed.  But if the Court exercises jurisdiction, each common law claim based on the May 22 incident fails.

"[A] plaintiff can recover for assault by proving 'intentional and unlawful attempt or threat, either by words or acts, to do physical harm to the plaintiff.'"  *District of Columbia v. Chinn*, 839 A.2d 701, 705 (D.C. 2003) (quoting *Holder v. District of Columbia*, 700 A.2d 738, 741 (D.C. 1997)).  Plaintiff's threadbare allegation that Moore "squared up" is insufficient to demonstrate that Moore placed Plaintiff in "apprehension of an imminent harmful or offensive contact," *Person v. Children's Hosp. Nat'l Med. Ctr.*, 562 A.2d 648 (D.C. 1989), and the assertion that Moore acted in a "threatening" manner, Compl. ¶ 65, in the context of an assault claim, is "a legal conclusion couched as a factual allegation," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555), which the Court is "not bound to accept as true," *id.*

Plaintiff's IIED claim fails for similar reasons that his Substantive Due Process claim falls short.  Just as the alleged conduct does not "shock the contemporary conscience," *Black Lives Matter D.C.*, 544 F. Supp. 3d at 49–50, neither is it "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," *Armstrong*, 80 A.3d at 189.

Finally, Plaintiff's negligence claim, which asserts that Moore violated a duty of care "[b]y participating in the May 22, 2023 assault," Compl. ¶ 218, falls short. "[A] plaintiff cannot seek to recover by 'dressing up the substance' of one claim, here assault, in the 'garments' of another, here negligence." *Blair v. District of Columbia*, 190 A.3d 212, 222 (D.C. 2018) (quoting *Chinn*, 839 A.2d at 708). Plaintiff's negligence claim "do[es] not rely on a factual scenario different from the one" supporting his assault and IIED claims, and he "claims no injury traceable to [Moore's allegedly] 'negligent' actions that were 'separate and distinct' from [Moore's allegedly] 'assaultive' conduct." *Id.* at 224 (quoting *Chinn*, 839 A.2d at 707–08). The intentional tort claims thus "preempt[] [his] negligence claim."

In sum, because Plaintiff's common law claims based on the alleged May 22 incident lack merit, the Court should dismiss them.

## CONCLUSION

For these reasons, and the applicable reasons provided in the Lead Motion to Dismiss, the Court should dismiss the Complaint as against Defendant Moore.

Date:  October 3, 2024

Respectfully submitted,

SETH ROSENTHAL
Chief Deputy Attorney General
for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Steven N. Rubenstein*
STEVEN N. RUBENSTEIN [1013094]
Chief, Civil Litigation Division Section V

*/s/ David B. Jastrab*
DAVID B. JASTRAB [1048299]
Assistant Attorney General
400 6th Street NW

14

Washington, D.C. 20001
(202) 309-8882
david.jastrab@dc.gov

*Counsel for Defendant Eric Moore*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| K.P., *a minor, by and through his next friend*, KIA POLLARD,<br><br>    *Plaintiff*,<br><br>  v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>    *Defendants*. | Case No. 24-cv-1325 (ABJ) |

## ORDER

Upon consideration of Defendant Eric Moore's Supplemental Motion to Partially Dismiss the Complaint, the memorandum of points and authorities in support thereof, any opposition thereto, and the entire record, it is this _____ day of _____ 2024, hereby

**ORDERED** that Defendant Moore's Motion is **GRANTED**; and it is further

**ORDERED** that Counts 1, 2, 4, 7, 9, 11, 13 and 16 as to Moore are **DISMISSED**; and it is further

**ORDERED** that Count 6 in its entirety is **DISMISSED**.

**SO ORDERED**.

_____
AMY BERMAN JACKSON
United States District Judge

Copies to:
All counsel of record